UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS LOVELL<br>*Surviving child of Jerry Lovell* | CIVIL ACTION |
| VERSUS | NO. 26-685 |
| BROOKDALE SENIOR LIVING COMMUNITIES, INC.<br>ET AL. | SECTION: "A"(2) |

## ORDER AND REASONS

Before the Court is a **Motion to Compel Arbitration and Stay Proceedings (R. Doc. 10)** filed by Defendants, Brookdale Senior Living Communities, Inc. ("Brookdale") and Emeritus Corporation. Plaintiff Thomas Lovell opposes the motion. The motion, set for submission on July 22, 2026, is before the Court on the briefs without oral argument. For the following reasons, the Court **GRANTS** the motion.

## I. Background

Thomas Lovell, the surviving child of Jerry Lovell, filed a complaint against Defendants seeking damages for wrongful death, survival, negligence, breach of contract, and breach of statutory duties. In early 2023, Jerry Lovell's family decided to admit him to Brookdale, where he resided in the facility's memory care unit.[1] On March 28, 2026, Jerry Lovell suffered a fall outside the facility that rendered him unconscious. Plaintiff alleges that Brookdale negligently failed to prevent him from wandering alone outside the facility.[2] After some time, Jerry Lovell was discovered by facility staff and was transferred via EMS to the hospital for evaluation.[3] Upon

---

[1] R. Doc. 11, Pl.'s Opp., at 1.
[2] R. Doc. 1, Complaint, ¶¶ 4-5.
[3] *Id.* ¶ 4

1

admission to the hospital, Jerry Lovell was found with a significant fever and severe burns to his body from prolonged sun exposure.[4] Despite receiving treatment for these injuries, Jerry Lovell's health unfortunately did not recover, and he died in the hospital on March 30, 2026.[5]

Jerry Lovell and Brookdale entered into a Residency Agreement on February 23, 2023. Plaintiff signed the Residency Agreement as the legal representative and power of attorney for Jerry Lovell.[6] Section V of the Residency Agreement includes the Agreement to Arbitrate (together "the Agreement"), which contemplates that all disputes arising out of Jerry Lovell's residency at Brookdale are submitted to binding arbitration:

> Any and all claims or controversies arising out of, or in any way relating to, this Agreement or any of your stays at the Community, excluding any action for involuntary transfer or discharge or eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of Local, State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, or otherwise, irrespective of the basis for the duty or the legal theories upon which the claims is asserted, shall be submitted to binding individual arbitration, as provided below, and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will <u>not</u> decide their case.**[7]

---

4 *Id.*
5 *Id.* ¶ 5.
6 Plaintiff does not dispute that he had the authority to enter into contracts on behalf of his father, Jerry Lovell.
7 R. Doc. 10-2, Residency Agreement, at 8.

The Agreement to Arbitrate further provides that it shall survive Jerry Lovell's death and purports to apply to claims brought by third parties pertaining to Jerry Lovell's residency at Brookdale against affiliates of Brookdale:

> This Arbitration Provision binds third parties not signatories to this Arbitration Provision, including any spouse, children, heir, representatives, agents, executors, administrators, successors, family members, or other persons claiming through the Resident, or persons claiming through the Resident's estate, whether such third parties make a claim in a representative capacity or in a personal capacity. Any claims or grievances against the Community or the Community's corporate parent, subsidiaries, affiliates, employees, officers or directors shall also be subject to and resolved in accordance with this Arbitration Provision.[8]

Defendants now ask the Court to compel arbitration in accordance with the Agreement and stay proceedings pending arbitration. Plaintiff argues that Defendants did not meet their burden of proof in showing that a valid and enforceable agreement existed between Plaintiff, acting as the mandatary of Jerry Lovell, and Brookdale. Plaintiff further argues that if a valid agreement did exist, his own claim for wrongful death is not subject to the Arbitration Agreement.

## II.   Law and Analysis

A two-step analysis is applied to determine whether a party may be compelled to arbitrate a claim. *Sherer v. Green Tree Serv., LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citing *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007)). The first inquiry is whether the party has agreed to arbitrate the dispute. *Id.* If so,

---

[8] *Id.* at 10.

then the second inquiry is whether any federal statute or policy renders the claim non-arbitrable.[9] *Id.*

The first inquiry itself contains two questions: 1) is there a valid agreement to arbitrate between the parties, and 2) does the dispute fall within the scope of the arbitration agreement? *Id.*; *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (citing *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003)). Courts apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope but not when determining whether a valid arbitration agreement exists. *Sherer*, 548 F.3d at 381 (citing *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 & n.5 (5th Cir. 2002)). Ordinary state law contract formation principles govern the question as to whether an agreement to arbitrate exists. *Will-Drill*, 352 F.3d at 214 (citing *Fleetwood*, 280 F.3d at 1073).

First, the Court finds that there was a valid agreement to arbitrate between Defendants and Jerry Lovell. Plaintiff does not allege that he did not sign the Agreement on behalf of his father; he does not allege that he did not have the authority to enter into contracts on behalf of his father, and he does not allege that he was fraudulently induced into signing the Agreement. Instead, he argues that Defendants did not unequivocally prove that the signature on the Agreement was his. The Court finds this argument unavailing.

---

9 The parties do not argue that any federal statute or policy renders the claim non-arbitrable.

Defendants have produced sufficient evidence to show that the electronic signature on the Agreement belonged to Plaintiff and complied with the Louisiana Uniform Electronic Transactions Act. *See* La. R.S. 9:2601, *et seq.* (under the ETA, electronic signatures are given the same legal effect as other types of signatures, and a contract may not be denied legal effect or enforceability simply because it is electronically signed).  Defendants attached the Certificate of Completion ("CoC") from DocuSign that clearly demonstrates that Plaintiff signed the Agreement.[10] Moreover, the CoC includes an "Envelope ID" number matching the one printed on the Residency Agreement. The CoC indicates that Plaintiff received the document at 4:25:34 PM on February 23, 2023, viewed the document at 4:33:12 PM on the same day, and signed the document at 4:33:42 PM.[11] An email address and computer IP address for delivery to Plaintiff are identified on the CoC.[12] Accordingly, the Court finds that a valid Agreement to Arbitrate exists in this matter.

Second, the Court must determine what claims fall within the scope of the Agreement. The parties do not dispute that, given the extremely broad  language of the Agreement, any claims stemming from Jerry Lovell's contractual relationship with Brookdale fall under the scope of the Agreement (the Agreement is intended to cover "[a]ny and all claims or controversies arising out of, or in any way relating to, this Agreement or any of your stays at the Community").[13] Instead, the issue is whether the Agreement covers Plaintiff's independent wrongful death claim.

---

10 R. Doc. 12-1, DocuSign, at 1.
11 *Id.*
12 *Id.*
13 R. Doc. 10-2 at 8.

Defendants claim that Plaintiff's independent claim is covered because the Agreement includes language that intends to bind "third parties not signatories to this Arbitration Provision, including any spouse, children, heir, representatives, agents, executors, administrators, successors, family members, or other persons … whether such third parties make a claim in the representative capacity or in a personal capacity."[14] Plaintiff argues that he cannot be required to submit his claims to arbitration because he signed on behalf of his father, and therefore did not personally submit himself to arbitration.

Generally, a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Traders' Mart, Inc. v. AOS, Inc.*, 268 So. 3d 420, 427 (La. App. 2 Cir. 2019), *writ denied sub nom. Trader's Mart, Inc. v. AOS, Inc.*, 280 So. 3d 1165 (La. 2019) ("This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.") However, Louisiana courts have recognized two types of estoppel through which a party may be bound to arbitrate under an agreement he did not sign: equitable estoppel and direct benefits estoppel. *Id.* Here, Defendants argue that Plaintiff availed himself of the Agreement through direct benefits estoppel.

Direct benefits estoppel applies when non-signatories have "embraced" the contract and then seek to repudiate the arbitration clause in litigation. *See id.* (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006).

---

14 R. Doc. 10-2 at 10.

A non-signatory may embrace a contract either by (1) knowingly seeking and obtaining "direct benefits" from it or (2) seeking to enforce the terms of the contract or asserting claims that must be determined by reference to it. *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). The Court finds that Plaintiff embraced the Residency Agreement (containing the arbitration clause) by asserting claims in this pending lawsuit that depend entirely on the existence of the contract (i.e., the breach of contract claim). *See contra. Janis v. Rent-A-Center East Inc.*, No. 25-141, 2025 WL 1616412, at *3 (W.D. La. 2025) (Cain, Jr., J.) (determining that Plaintiffs' wrongful death claim will not be subject to arbitration because it is not clear from the complaint whether they relied on the warranty in the Agreement or some other assurances to bring their suit).

Accordingly;

**IT IS ORDERED** that Defendant's **Motion to Compel Arbitration and Stay Proceedings (R. Doc. 10)** is **GRANTED.**

**IT IS FURTHER ORDERED** that this matter is **STAYED AND ADMINISTRATIVELY CLOSED**, pending a final decision by the Arbitration Tribunal. If any issues remain after a final judgment by the Arbitration Tribunal, any party may file a written motion for leave to reopen this matter.

July 28, 2026

_____

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

7